# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF NEW YORK

DISTRICT COURT - N.D. OF N.Y.

**FILED**

MAY 1 2 2005

AT_____ O'CLOCK_____
Lawrence K. Baerman, Clerk - Syracuse

**Case No. 84-CR-139**

UNITED STATES OF AMERICA,

v.

ROBERT M. WEICHERT, ADIRONDACK
WOOD STOVE WORKS, INC., and
TIMBERLINE EAST,

Defendants.

**NOTICE OF MOTION TO ANNUL, VACATE, AND SET ASIDE THE CONVICTION IN THE ABOVE CAPTIONED ACTION ON THE GROUNDS OF PROSECUTORIAL MISCONDUCT, and FURTHER, PURSUANT TO BRADY v. MARYLAND; PYLE v. KANSAS; BERGER v. UNITED STATES and SUBSEQUENT CASES, BASED ON THE PROSECUTORIAL USE OF PERJURED TESTIMONY.**

6:05cv571 (DNH)

SIRS:

PLEASE TAKE NOTICE, that upon the motion and the annexed supporting affidavit of Robert M. Weichert, together with the supporting papers hereinafter mentioned, a motion will be made as follows:

Motion By:

Defendant, Robert M. Weichert, Pro Se

Date, Time and Place of Motion:

June 28, 2005 at 10:00 o'clock in the forenoon of that day at U.S. Federal Courthouse, 100 South Clinton Street, Syracuse, New York, at Courtroom 4

Object of Motion:

To annul, vacate and set aside the conviction herein based on the grounds of prosecutorial misconduct, and further, pursuant to Brady v. Maryland; Berger v. United States, and subsequent cases, based on the prosecutorial use of perjured testimony.

Supporting Papers:

Motion and Supporting Affidavit of Robert M. Weichert, defendant herein, together with the exhibits attached hereto, and, upon further reading and filing all prior pleadings and proceedings in the criminal docket of this case, and the Grand Jury minutes

Responding Papers:

Answer affidavit shall be served upon defendant, Robert M. Weichert, at least seven (7) days before the return date of Motion

Motion Opposed By:                    U.S. Attorney for the Northern District of New York

Dated:                                May 11, 2005.


ROBERT M. WEICHERT, Defendant, Pro Se
46 Oswego Street
Baldwinsville, New York 13027
(315) 635-3224

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No. 84-CR-139** |
| v. | **MOTION TO ANNUL, VACATE AND SET ASIDE THE CONVICTION IN THE ABOVE CAPTIONED ACTION ON THE GROUNDS OF PROSECUTORIAL MISCONDUCT, and FURTHER, PURSUANT TO BRADY v. MARYLAND; PYLE v. KANSAS; BERGER v. UNITED STATES and SUBSEQUENT CASES, BASED ON THE PROSECUTORIAL USE OF PERJURED TESTIMONY.** |
| ROBERT M. WEICHERT, ADIRONDACK WOOD STOVE WORKS, INC., and TIMBERLINE EAST, | |
| Defendants. | |

UPON reading and filing the supporting affidavit of Robert M. Weichert, defendant herein, together with the exhibits attached thereto, and, upon further reading and filing all prior pleadings and proceedings in the criminal docket of this case, and the Grand Jury minutes, defendant hereby moves this court, at a time and date to be determined by the Court at the U.S. Federal Courthouse, Federal Building, 201 S. Clinton Street, Syracuse, New York, to annul, vacate and set aside the conviction herein based on the grounds of prosecutorial misconduct, and further, pursuant to **Brady v. Maryland**, 375 US 83 (1963); **Pyle v. Kansas**, 317 U.S. 213, 215-216; **Berger v. United States**, 295 US 78 (1935) and subsequent cases, based on the prosecutorial use of perjured testimony.

Dated: _May 11_ , 2005.

_Robert M. Weichert_

Robert M. Weichert, *Pro Se, Defendant*
Office and Post Office Address
46 Oswego Street
Baldwinsville, New York 13027
Tel. No. (315) 635-3224

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ROBERT M. WEICHERT, ADIRONDACK
WOOD STOVE WORKS, INC., and
TIMBERLINE EAST,
               Defendants.

Case No. 84-CR-139

**SUPPORTING AFFIDAVIT OF
ROBERT M. WEICHERT**

STATE OF NEW YORK    }
COUNTY OF ONONDAGA } ss.:

**ROBERT M. WEICHERT**, being duly sworn, deposes and says:

1. This Court has jurisdiction to hear and determine this matter, pursuant to **Brady v. Maryland**, 373 U.S. 83 (1963); **Pyle v. Kansas**, 317 U.S. 213, 215-216; **Berger v. U.S.**, 295 U.S. 78 (1935); **Mooney v. Holohan**, 294 U.S. 103 (1935); **United States v. Basurto**, 497 F. 2d 781, 786 **(CA9, (1974))**.

Like the Hydra slain by Hercules, prosecutorial misconduct has many heads.  Some are cataloged in Justice Sutherland's classic opinion for the Court in **Berger v. United States**, 295 U.S. 78 (1935):

"That the United States prosecuting attorney over stepped the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense is clearly shown by the record.  He was guilty of misstating the facts in his cross examination of witnesses; of putting into the mouths of such witnesses things which they had not said; of suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered; of pretending to understand that a witness had said something which

1

he had not said and persistently cross examining the witness upon that basis; of assuming prejudicial facts not in evidence; of thoroughly indecorous and improper manner...

"The prosecuting attorney's argument to the jury was undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury." *Id.*, at 84-85.

This, of course, is not an exhaustive list of the kinds of improper tactics that overzealous or misguided prosecutors have adopted in judicial proceedings. The reported cases of this Court alone contain examples of the knowing use of perjured testimony, **Mooney v. Holohan**, 294 U.S. 103 **(1935)**, the suppression of evidence favorable to an accused person, **Brady v. Maryland**, 373 U.S. **83, 87-88 (1963)**, and misstatements of the law in argument to the jury, **Caldwell v. Mississippi**, 472 U.S. 320, 336 (1985), to name just a few.

Nor has prosecutorial misconduct been limited to judicial proceedings: the reported cases indicate that it has sometimes infected grand jury proceedings as well. The cases contain examples of prosecutors presenting perjured testimony, **United States v. Basurto**, 497 F. 2d 781, 786 (CA9 **1974)**, questioning a witness outside the presence of the grand jury and then failing to inform the grand jury that the testimony was exculpatory, **United States v. Phillips Petroleum, Inc.**, 435 F. **Supp. 610, 615-617 (ND Okla. 1977)**, failing to inform the grand jury of its authority to subpoena witnesses, **United States v. Samango**, 607 F. 2d 877, 884 (CA9 1979), operating under a conflict of interest, **United States v. Gold**, 470 F. Supp. 1336, 1346-1351 (ND Ill. 1979), misstating the law, **United States v. Roberts**, 481 F. Supp. 1385, 1389, and n. 10 (CD Cal. 1980), [n.8] and misstating the facts on cross examination of a witness, **United States v. Lawson**, 502 F. Supp. 158, 162, and **nn. 6-7 (Md. 1980)**.

2

Justice Sutherland's identification of the basic reason why that sort of misconduct is intolerable merits repetition:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." **Berger v. United States, 295 U.S., at 88**.

It is equally clear that the prosecutor has the same duty to refrain from improper methods calculated to produce a wrongful indictment. Indeed, the prosecutor's duty to protect the fundamental fairness of judicial proceedings assumes special importance when he is presenting evidence to a grand jury. As the Court of Appeals for the Third Circuit recognized, "the costs of continued unchecked prosecutorial misconduct" before the grand jury are particularly substantial because there

"the prosecutor operates without the check of a judge or a trained legal adversary, and virtually immune from public scrutiny. The prosecutor's abuse of his special relationship to the grand jury poses an enormous risk to defendants as well. For while in theory a trial provides the defendant with a full opportunity to contest and disprove the charges against him, in practice, the handing up of an indictment will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo. Where the potential for abuse is so great, and the consequences of a mistaken indictment so serious, the ethical responsibilities of the prosecutor, and the obligation of the judiciary to protect against even the appearance of unfairness, are correspondingly heightened."

3

**United States v. Serubo**, 604 F. 2d 807, 817 (1979).

In his dissent in **United States v. Ciambrone**, 601 F. 2d 616 (CA2 1979), Judge Friendly also recognized the prosecutor's special role in grand jury proceedings:

"As the Supreme Court has noted, the Founders thought the grand jury so essential to basic liberties that they provided in the <u>Fifth Amendment</u> that federal prosecution for serious crimes can only be instituted by "a presentment or indictment of a Grand Jury." **United States v. Calandra**, 414 U.S. 338, 343,...(1974). Before the grand jury the prosecutor has the dual role of pressing for an indictment and of being the grand jury advisor. In case of conflict, the latter duty must take precedence. **United States v. Remington**, 208 F. 2d 567, 573-74 (2d Cir. 1953)(L. Hand, J., dissenting), cert. denied, 347 U.S. 913...(1954).

"The *ex parte* character of grand jury proceedings makes it peculiarly important for a federal prosecutor to remember that, in the familiar phrase, the interest of the United States 'in a criminal prosecution is not that is shall win the case, but that justice shall be done.' **Berger v. United States,** 295 U.S. 78, 88...(1935)." *Id.,* at 628-629. [n.9].

If the misconduct had played a critical role in persuading the jury to return the indictment, dismissal would have been required. Dissent, **United States v. Williams,** 504 U.S. 36 (1992).

Applying the above recited law to this specific case, both Assistant U.S. Attorney William Pease and his superior, U.S. Attorney Frederick Scullin (now the Honorable Frederick Scullin, U.S. District Court Judge for the Northern District of New York), dealt this defendant foul blows. They violated their duty to refrain from improper methods calculated to produce a wrongful indictment and conviction. They violated their duty to protect defendant's fundamental fairness of the judicial proceedings. They hid behind their immunity from public scrutiny. They abused their special

4

relationship to the grand jury.  They violated their ethical responsibilities of a prosecutor and the obligation to the judiciary to protect against even the appearance of unfairness.  **United States v. Serubo, 604 F. 2d 807, 817 (1979).**

2.  That he is the defendant in the above captioned action. Certified copy of the criminal docket is attached as **"Exhibit 5"**.

3.  That he was convicted of bankruptcy fraud on May 31, 1985.

4.  That a reading of the attached sworn testimony (**"Exhibit 1"**) of Harold P. Goldberg on May 30, 1985, at trial of this matter, indicates that on page 4 he was asked:

> **Question: "Did you make any determination as to what the nature of the assets were?**
>
> **Answer: The assets consisted of a few stoves in a finished condition, general inventory or raw materials available to be fabricated into woodstoves, and certain equipment that was in the plat such as welding machines, painting machines, blowers, furnaces, things of that nature.**
>
> **Question: Did you make any determination with respect to whether there were any accounts receivable on behalf of the bankruptcy estate, Timberline Energy Corporation?**
>
> **Answer: None could be found.**
>
> **Question: Did you make any determination--withdraw the question. Mr. Goldberg, were you at any time –**
>
> **The Court: Just a minute.  In your final report, did you list the assets that you found and took into your possession?**
>
> **The Witness (Goldberg): Actually I did that, but it's not a final report. The estate is still open.**

5

**The Court: But you have that.  Do you have a list?**

**The Witness (Goldberg): Yes, that was submitted to the Court along with the appraisal.**

**The Court: That's the quickest way to find out what the assets were."**

5. Harold P. Goldberg turned over to the trial court the Order For Sale of Assets with attachments and Appraisal **("Exhibit 2")** of the aforementioned list, indicating that his testimony was erroneous.

6. In the bankruptcy proceeding of  "In Re: Timberline Energy Corporation", case number. 81-00552, the Honorable Leon J. Marketos ordered sale of assets upon notice to creditors upon application of Harold P. Goldberg, dated November 9, 1981, **("Exhibit 2")** which includes a list of assets indicating the large number **(333)** of the actual stoves sold. \* **("See itemized schedule Exhibit 6")** wherein he testified "few", further indicating the perjury in Harold P. Goldberg's testimony at trial on May 30, 1985 **("Exhibit 1")**.

7. The auction sheets of H. Meltzer & Sons, dated November 23, 1981 **("Exhibit 2")** at the actual sale of the assets in Timberline Energy Corporation,  indicating again, the perjury of Harold P. Goldberg's testimony on May 30, 1985, **("Exhibit 1")** are attached hereto and made a part hereof.

8. On September 23, 1986, Harold P. Goldberg testified before the Honorable Stephen Gerling, Bankruptcy Judge in the In Re: Timberline Energy Corporation case number 81-00522, in an adversary proceeding of Harold P. Goldberg, Trustee vs. the defendant herein, adversary number 86-0036, the transcript **("Exhibit 3")**  of which is attached hereto and made a part hereof, and upon questioning by Judge Gerling, at page 4, concerning the restitution figure which "Mr. Weichert infers was simply picked out of the air by somebody", Harold P. Goldberg, Trustee, testifies:

**"There are no books and records that are available to trace this, there, other than**

6

affidavits of employees and foremen who were involved, who can only estimate the amount of stoves that were on hand prior to the time that Merchant's Bank had the Marshal close this particular place of business up. There is no conceivable way on earth that I, as Trustee, nor anyone that I know of, could reconstruct exactly what fruits this defendant has gained by virtue of it's conversion of the assets. So I think I'm relying solely upon what the Court held in the Restitution Order. The Court felt that at least they had some proof as to what the defendant's activities were in this case and the extent of the loss and I don't think it's up to us to determine the penny by penny amount of the loss because, *quite frankly, I could not prove it"*. All of which indicates the perjury of Mr. Goldberg's trial testimony on May 30, 1985, (**"Exhibit 1"**) and also at the grand jury. Mr. Goldberg relies solely upon what the court held in the restitution order, and the court relied on Mr. Goldberg for that restitution order. Deponent's Pre-Sentence Report (PSI) stated that Goldberg projected losses at $200,000.00 including cash and woodstoves, again indicating his perjury.

9. Deponent submits that had the grand jury and the trial jury, that heard this matter, known of the inconsistent testimony of this witness, they would not have believed him and would not have convicted defendant. The defendant has been prejudiced thereby. This matter was presented, and Harold P. Goldberg testified in a 1981 grand jury proceeding and defendant was no-billed. Then, in 1984, this matter was again presented to another grand jury, where based on Goldberg's testimony, an indictment was handed up.

10. The prosecutor, William Pease, knew, or should have known, that he allowed the Grand Jury to hear false testimony, of the perjury of Mr. Goldberg. In a letter (**"Exhibit 4"**) from William Pease, Assistant U.S. Attorney to Harold P. Goldberg dated November 21, 1986, attached hereto and

7

made a part hereof, he states, ..."**Bank employees testified that immediately following the shutdown they returned to the warehouse to conduct an inventory and to secure the premises and found no completed woodburning stoves but only a number of cheaper coal-burning stoves which our witnesses told us did not work well and were not particularly marketable. Also found on the premises, of course, were numerous items of odd parts and equipment but nothing of major value. My recollection is that your auctioneer was able to generate close to $100,000 at the time of the bankruptcy sale which exceeded the appraised value of the property on the premises."** Mr. Goldberg states in one breath and testified before Judge McMahon on May 30, 1985, (**"Exhibit 1"**) along with the appraisal, a list of the assets that he found and took into his possession, (**"Exhibit 2"**) 333 stoves, showing the contrary and inconsistent nature of his testimony.  Then, on September 23, 1986, he testifies before Judge Gerling that quite frankly, he could not prove it, indicating the perjury that he committed in the trial before Judge McMahon, and before the grand jury.

11.  Defendant has met the three essential components of a true Brady violation: the evidence at issue is favorable to the accused because it is exculpatory, or because it is impeaching: the evidence was suppressed by the government either willfully or inadvertently; and, prejudice ensued, that is, defendant was imprisoned for three years and placed on probation for an additional five years, as well as being labeled a convicted felon, and made a "leper" in the community, and further, in addition, the loss of his hunting and flying privileges, and other licenses.

12.  Harold P. Goldberg was the prime witness against deponent.  It was he who made the initial complaint, charging defendant with bankruptcy fraud to the FBI.  It was he who testified before two grand juries and to the trial jury in an effort to obtain deponent's conviction stating generally that deponent had stolen all of these stoves that he could not account for in the Timberline bankruptcy,

8

and his testimony was used therein by Assistant U.S. Attorney William Pease and U.S. Attorney Frederick Scullin to obtain a conviction, when, in fact, he did account for all the stoves and sold them at Timberline's sale of assets. And, after obtaining deponent's conviction, turned around and testified before Judge Gerling, Bankruptcy Judge, that, ... "There is no conceivable way on earth that I, as Trustee, nor anyone that I know of, could reconstruct exactly what fruits this defendant has gained by virtue of it's conversion of the assets. ...Quite frankly, I could not prove it."(Harold P. Goldberg, Trustee vs. Robert M. Weichert, Bankruptcy Court, (NDNY) Case No. 81-00522, from transcript of Goldberg's testimony at Motion Term Sept. 23, 1986, p. 4) (**"Exhibit 3"**).

Dated: _May 11_, 2005.

Respectfully Submitted,

Robert M. Weichert, *Pro Se, Defendant*
Office and Post Office Address
46 Oswego Street
Baldwinsville, New York 13027
Telephone No. (315) 635-3224

Sworn to before me this
11th day of _May_, 2005.

Notary Public

9

DONNA J. SEYMOUR
Notary Public in the State of New York
County No. 461760
My Commission Expires January 31, 2006