UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~

ROBERT M. WEICHERT,

                                        Petitioner,

              - vs -                                    6: 05-CV-0571
                                                        (5:84-CR-0139)
UNITED STATES OF AMERICA,                  (Related criminal action)

                                        Respondent.


~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~

APPEARANCES:                                    OF COUNSEL:

ROBERT M. WEICHERT
Petitioner, *pro se*
46 Oswego Street
Baldwinsville, New York 13027

HON. GLENN T. SUDDABY                    WILLIAM H. PEASE, Esq.
United States Attorney                   Ass't U.S. Attorney
P.O. Box 7198
100 S. Clinton St.
Syracuse, NY 13261-7198

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION AND ORDER[1]

## I. Background

### A. History

     Timberline Energy Corp. ("Timberline Energy") was a New York corporation in the

business of manufacturing and distributing wood and coal burning stoves and related

products.   On April 13, 1981, Timberline Energy filed a petition in the United States

---

[1] The factual background of this action is derived from various judicial decisions that have been published that relate to the present coram nobis action brought by petitioner, *pro se* Robert M. Weichert, as well as the related criminal and bankruptcy proceedings in which petitioner was involved, familiarity with which is presumed.

Bankruptcy Court of the Northern District of New York for reorganization under Chapter 11 of the bankruptcy code.   In July 1981, Robert M. Weichert ("Weichert" or "petitioner"), who at the time was President and principal owner of Adirondack Wood Stove Works, Inc. ("Adirondack"), together with Ivan Preslar, then-President of Timberline Energy, announced that Weichert was assuming managerial control over Timberline Energy.  Shortly thereafter, Weichert and Preslar agreed to form a new business entity named Timberline East, Inc. ("Timberline East") in which Preslar was to be a silent partner.  In August 1981, Weichert opened a checking account on behalf of Timberline East, and thereafter deposited numerous checks issued to Timberline Energy into the Timberline East checking account.

On September 10, 1981, the Chapter 11 bankruptcy petition filed by Timberline Energy was converted into one for liquidation under Chapter 7 of the bankruptcy code. Based upon that conversion, federal marshals padlocked the premises of Timberline Energy that same day.

The prosecution established at Weichert's criminal trial that during the weeks immediately prior to the court-ordered shutdown of Timberline Energy, he and Preslar, fraudulently transferred large amounts of Timberline Energy's raw materials, stoves, and office equipment from the bankruptcy estate.  For example, the Government demonstrated that just before Timberline Energy's petition was changed to one requiring its liquidation, petitioner directed the removal of large quantities of Timberline Energy's inventory to Adirondack as well as to premises he owned.  The evidence further established that after Timberline Energy's liquidation had been ordered by the bankruptcy court, an employee of that company returned a check to the Agway corporation ("Agway") which had been made payable to Timberline Energy and requested that Agway issue a new check in the same

- 2 -

amount that was payable to Timberline East.  Agway complied with the request and the check was deposited in Timberline East's checking account.

On October 19, 1984, a grand jury for the Northern District of New York returned an indictment against Weichert, Preslar, and others in which Weichert was charged with engaging in a criminal conspiracy to conceal from the United States bankruptcy trustee the assets of Timberline Energy by improperly transferring its inventory, cash, and other property to Timberline East, in violation of 18 U.S.C. § 371.  In that accusatory instrument, Weichert was also charged with four substantive counts of bankruptcy fraud, in violation of  18 U.S.C. § 152.  *See*, *e.g.*, *United States v. Preslar et al.*, 608 F.Supp. 986, 987 (N.D.N.Y. 1985) (Munson, J.).  On May 31, 1985, following a three-day jury trial, Weichert was convicted on all counts, and thereafter was sentenced to a total of eight years imprisonment, five of which was ordered suspended by the district court.  His convictions and sentences were affirmed in all respects on appeal.  *United States v. Weichert*, 783 F.2d 23 (2d Cir. 1986).

Weichert thereafter filed a Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255.  In his application, he argued that: (1) the indictment was defective; (2) he was the victim of prosecutorial misconduct; (3) the pre-sentence report prepared by the Probation Department of the Northern District of New York was erroneous; and (4) he received the ineffective assistance of trial counsel.  In a Memorandum-Decision and Order dated August 19, 1987, United States District Judge Lloyd F. MacMahon of the Southern District of New York, sitting by designation in the Northern District, denied the § 2255 application in all respects.  *See United States v. Weichert*, 668 F.Supp. 125 (N.D.N.Y. 1987).  Although he did not appeal the order denying his Motion to Vacate, *e.g.*, *United States v. Weichert*, 836 F.2d 769, 771 n.2 (2d Cir. 1988), the petitioner eventually succeeded

in reducing the amount of restitution he was required to pay as a result of his criminal conduct from $200,000.00 to $155,956.64 through an action he commenced pursuant to Rules 32 and 35 of the Federal Rules of Criminal Procedure. *See United States v. Weichert*, 89 B.R. 346, 351 (N.D.N.Y.), *aff'd*, 862 F.2d 305 (2d Cir. 1988).

## B. <u>Present Application</u>

On May 12, 2005, Weichert filed this application for a writ of error coram nobis in this District. *See* Dkt. No. 1. In that submission, he argues that his 1985 conviction must be set aside because his conviction was purportedly obtained as a result of perjurious testimony provided by the bankruptcy trustee at the criminal trial. *See* Affidavit of Robert M. Weichert in Support of Coram Nobis Application (5/11/05) (attachment to Dkt. No. 1) ("May, 2005 Aff.") at pp. 1-9. After filing his coram nobis application and attachments thereto, petitioner filed several additional submissions in further support of that application for relief. *See* Dkt. Nos. 8, 13, and 14.

On December 27, 2005, respondent filed a memorandum of law in opposition. Dkt. No. 15.

## II. <u>Discussion</u>

### A. <u>Scope of Coram Nobis Relief</u>

"Coram nobis is an 'extraordinary remedy' authorized under the All Writs Act, 28 U.S.C. § 1651(a), generally sought to review a criminal conviction where a motion under 28 U.S.C. § 2255 is unavailable because petitioner is no longer serving a sentence." *Porcelli v. United States*, 404 F.3d 157, 158 (2d Cir. 2005) (quoting *United States v. Morgan*, 346 U.S. 502, 511 (1954)). Coram nobis applications may not to be used as substitutes for appeal,

however, and a petitioner seeking such relief bears a substantial burden.  As the Second Circuit noted in *Foont v. United States*, 93 F.3d 76 (2d Cir. 1996), such relief "is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *Id*. at 78.  For a district court to properly grant a writ of error coram nobis, a petitioner must demonstrate that: (1) he continues to suffer legal consequences from his conviction that may be remedied by the granting of the writ; (2) sound reasons exist for his failure to seek appropriate relief at an earlier time; and (3) the circumstances demonstrate that the requested relief must be granted to achieve justice.  *See United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000) (internal quotation and citation omitted).

### B. Review of Weichert's Claims

In support of his coram nobis application, Weichert argues that Harold P. Goldberg, Esq. ("Goldberg") – who was appointed the bankruptcy trustee with respect to Timberline Energy after the bankruptcy petition was filed – committed perjury before the grand jury that indicted Weichert and during the course of petitioner's criminal trial. *See* May, 2005 Aff. at ¶¶ 4-9.[2]  In support of this claim, petitioner notes that in testifying at the criminal trial about his review of the assets of Timberline Energy after bankruptcy proceedings had been initiated, Goldberg declared that:

> [the company's] assets consisted of a few stoves in a finished condition, general inventory or raw materials available to be fabricated into wood-stoves, and certain equipment that was in the pla[n]t such as welding machines, painting machines, blowers, furnaces, things of that nature.

---

[2] Any claim by Weichert arising out of allegedly perjurious testimony given by Goldberg to the grand jury must fail; as the Supreme Court noted in *United States v. Mechanik*, 475 U.S. 66 (1986), "the petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation." *Id.* at 73.

*See* Transcript of Trial of *United States v. Weichert et al.* (5/30/85) (Dkt. No. 1, Exh. 1) ("Trial Tr.") at p. 4.  Petitioner argues that the itemized list that was prepared following the bankruptcy sale of Timberline Energy's assets establishes that 333 stoves of that company were sold at the bankruptcy auction – a quantity far greater than the "few" stoves about which Goldberg testified at trial.  *Compare* May 2005 Aff. at ¶ 6 & Dkt. No. 1, Exh. 6 *with* Trial Tr. at p. 4.  Petitioner claims that the foregoing establishes that: (1) Goldberg committed perjury at the criminal trial and before the grand jury that indicted him; (2) the Government withheld *Brady* material[3] to which he was entitled prior to his criminal trial; and (3) his conviction must be set aside.  May 2005 Aff. at ¶¶ 10-12.

As additional proof of his perjury claim, petitioner notes that subsequent to that testimony, a hearing was held before the Hon. Stephen D. Gerling of the United States Bankruptcy Court for this District on September 23, 1986 at which Goldberg also testified.  *See* Dkt. No. 1, Exh. 3 ("September 1986 Tr.").  At that proceeding, Goldberg testified that it was "impossible" to determine exactly what was stolen from Timberline Energy as a result of Weichert's conduct, and because no corporate books or records were maintained by that company, and former employees were forced to merely estimate the number of stoves that were on hand at the time Timberline Energy was shut down.  September 1986 Tr. at p. 4.  Goldberg further testified that there was "no conceivable way" he could prove the amount of the loss sustained by Timberline Energy.  September 1986 Tr. at p. 4.  Petitioner argues that Goldberg's testimony at the September 1986 hearing before Judge Gerling further establishes that Goldberg committed perjury when he testified at trial that only "a few" stoves

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

were present at Timberline Energy when it was padlocked by the United States Marshals.
May 2005, Aff. at ¶ 8.

Respondent contends that Weichert's application should be denied in that it is both
untimely and substantively without merit.  *See* Dkt. No. 14 at pp. 8-15.

### 1. Continuing Legal Consequences

It must initially be considered whether Weichert has established that he continues to
suffer legal consequences from his conviction which may be remedied by the granting of his
coram nobis application.  *E.g.*, *Mandanici*, 205 F.3d at 524.

To demonstrate that he continues to suffer legal consequences due to his 1985
conviction, Weichert must identify a concrete and serious continuing legal consequence he
endures as a result of that conviction; "the mere 'desire to be rid of the stigma' of a
conviction" is insufficient to prove the existence of such collateral consequences.  *Fleming v.
United States*, 146 F.3d 88, 90-91 (2d Cir. 1998).

Weichert argues that the challenged conviction:  (1) resulted in his disbarment from
the bar of the State of New York; and (2) prevents him from seeking reinstatement of his
admission to that bar.  *See* Dkt. No. 13 at ¶ 2(a), (b).  Petitioner additionally asserts that the
conviction prevents him from reacquiring his real estate license, becoming a notary public,
and legally possessing firearms.  *Id.* at ¶ 2(c), (d).  He also notes that he cannot vote as a
result of his conviction, and it acts as a bar to the restoration of his pilot's license.  *Id.* at ¶
2(e), (f).

The Second Circuit has held that a petitioner may satisfy the continuing harm
requirement applicable to coram nobis applications where he establishes that the challenged

conviction deprives him of his right to vote. *Fleming*, 146 F.3d at 90 ("continuing legal consequences that would support granting the writ [exist] where a prior conviction deprives a petitioner of his right to vote under state law").  In light of *Fleming*, petitioner has demonstrated that he suffers from ongoing legal consequences as a result of the challenged conviction.

### 2. Failure to Seek Earlier Relief

Next, it must be determined whether Weichert has established that sound reasons exist for his failure to seek the relief he now seeks at an earlier date. *E.g. Mandanici*, 205 F.3d at 524.  Although no particular limitation period applies for petitions seeking coram nobis relief, such an application may properly be denied where the petitioner fails to demonstrate sound reasons for undue delay in seeking such relief. *Foont v. United States*, 93 F.3d 76, 79-80 (2d Cir. 1996).  As that court noted, since constitutional errors that occur in criminal matters merely render the conviction "voidable, not void," coram nobis applications may properly be denied where the petitioner has unjustifiably allowed a significant period of time to elapse between the challenged conviction and the application seeking coram nobis relief. *Id.,* 93 F.3d at 79.  District courts are to decide this issue in light of the circumstances presented by the individual case while remaining cognizant of the fact that the onus is on the petitioner to demonstrate justifiable reasons for his delay in bringing the collateral attack. *Id.*

In attempting to justify the lengthy delay between the conviction Weichert now challenges and the date on which he commenced the present coram nobis application, he argues that he:

> should not be criticized for failing to bring this motion earlier.  This court
> should realize the long, almost impossible task of obtaining the certified
> transcript of minutes of the proceedings setting forth the perjury.  It should

> also be aware of the trauma inflicted upon the deponent's life, as a result of
> the actions of the United States Attorney.  The United States Attorney can
> not hide behind it's misconduct, and deponent is willing to engage in a [*sic*]
> evidentiary hearing, to illustrate what prejudice deponent incurred.
> Deponent had no opportunity to raise the issue on trial or appeal because
> of the timing of Mr. Goldberg's testimony in Bankruptcy Court.

*See* Affidavit of Robert M. Weichert (6/22/05) (attachment to Dkt. No. 1) at ¶ 5.

Weichert has unduly delayed the filing of this coram nobis application.  The transcript containing Goldberg's trial testimony was necessarily transcribed in conjunction with petitioner's appeal of his criminal conviction in 1986, which was argued before the Second Circuit on December 9, 1985.  *See Weichert*, 783 F.2d at 23.  Moreover, the transcript of the September 1986 hearing before Judge Gerling upon which petitioner now relies was transcribed by the court stenographer no later than October 15, 1986.  *See* September 1986 Tr. at (unnumbered) p. 9.  Finally, the record of the assets of Timberline Energy that were sold at auction upon which petitioner additionally bases his claim that Goldberg committed perjury was filed with the bankruptcy clerk in December 1981.  *See* Dkt. No. 1, Exh. 2 at (unnumbered) p. 10.  Thus, nearly **nineteen years** passed between the time the September 1986 hearing was transcribed and the date on which Weichert commenced this action.[4]

In *Foont*, the Second Circuit found no abuse of discretion when the district court denied a coram nobis petition brought five years after the guilty plea which the petitioner sought to challenge had been entered.  *Id.*, 93 F.3d at 81.  In agreeing with the district court that the application was untimely, the Second Circuit specifically opined that "to entertain

---

[4] The transcript of the September 1986 hearing before Judge Gerling is the most recent court document upon which petitioner relies in support of his coram nobis application.

*Foont's* petition notwithstanding his unjustifiable delay would be an unwarranted infringement upon the government's interest in the finality of convictions." *Id.* at 80.

In the matter *sub judice*, nothing in the record supports Weichert's claim that he was confronted with an "almost impossible task" in obtaining the court materials referenced above upon which he relies in the current application.  To the contrary, all of the evidence which petitioner cites in support if his present petition was available for review by the public no later than October 15, 1986.

The nearly nineteen years that elapsed between the time the testimony was offered at the September 1986 hearing and it was transcribed, and the date on which Weichert commenced this action conclusively establishes that this proceeding was untimely filed. Therefore, petitioner's coram nobis application may properly be denied on this basis alone. *See Foont*, 93 F.3d at 81; *see also Adegbuji v. United States*, Nos. 93 CR. 659, 03 CIV. 2667, 04 CIV. 9957, 2006 WL 39508, at *3 (S.D.N.Y. Jan. 6, 2006) (nearly nine year delay in filing coram nobis application "is enough reason to dismiss [petitioner's] coram nobis claim"); *Ejekwu v. United States*, No. 02 CV 699, 2005 WL 3050286, at *3 (E.D.N.Y. Nov. 14, 2005) (more than two year delay between denial of application for naturalization and action brought by petitioner seeking coram nobis relief rendered petition untimely); *Mastrogiacomo v. United States*, No. 90 CR 565, 2001 WL 799741, at *2 (S.D.N.Y. July 16, 2001) (three year delay in filing coram nobis petition following conviction warranted dismissal of application as untimely).

### 3.  **Must Relief Be Granted to Achieve Justice?**

Even had Weichert established that his delay in filing the present action was justified, he has failed to meet his burden of demonstrating that the relief sought must be granted in order to achieve justice.

"[C]oram nobis relief is available to correct only the most fundamental errors which have infringed substantial rights."  *Tocci v. United States*, 178 F.Supp.2d 176, 185 (N.D.N.Y. 2001) (Homer, M.J.).  As the court noted in *Durrani v. United States*, 294 F.Supp.2d 204 (D.Conn. 2003), *aff'd*, *United States v. Durrani*, 115 Fed.Appx. 500 (2d Cir. 2004) (unreported), to warrant coram nobis relief, "a petitioner must show a defect in the proceedings that resulted in a 'complete miscarriage of justice.'"  *Durrani*, 294 F.Supp.2d at 215 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

Petitioner alleges that Assistant United States Attorney William H. Pease, Esq. ("AUSA Pease"), who prosecuted the criminal case against Weichert on behalf of the Government, knew or should have known that Goldberg's testimony before the grand jury was false, *see* May 2005 Aff. at ¶ 10.  Also, that AUSA Pease, together with now-Senior United States District Judge Frederick J. Scullin, Jr. (who was the United States Attorney for the Northern District of New York at the time of Weichert's trial), improperly elicited perjurious testimony from Goldberg at trial in order to obtain a conviction.  *Id.* at ¶ 12.

It is clear that to prevail on the merits of his coram nobis application, Weichert must initially establish that Goldberg's testimony was, in fact, perjurious.  *E.g.*, *United States v. White*, 972 F.2d 16, 20 (2d Cir. 1992) (where allegation of perjury is basis for claim seeking collateral relief, "a threshold inquiry is whether the evidence demonstrates that the witness in fact committed perjury") (citation omitted); *see also Campbell v. Greene*, 440 F.Supp.2d 125,

147 (N.D.N.Y. 2006) (McCurn, S.J.) (citing *White*) (other citation omitted).  Petitioner has

failed to make such a showing herein.

   At Weichert's criminal trial, Goldberg testified that Timberline Energy's assets were

comprised of, *inter alia*, "a few stoves in a finished condition" around the time that such

company's assets were liquidated.  *See* Trial Tr. at p. 4.  Petitioner claims that that aspect of

Goldberg's testimony was perjurious because a prior inventory that had been made of the

assets of Timberline Energy established that 333 stoves were actually sold at the bankruptcy

auction which Goldberg oversaw.  May 2005 Aff. at ¶ 6.  However, petitioner's claim is both

factually and logically flawed.

   Initially, it is noted that in arriving at his figure of 333 stoves, petitioner wrongfully

included over 200 items which the auction invoice clearly indicated were ***not*** "stoves in a

finished condition," but rather, were either unfinished stoves or parts that could be used in

the assembly of stoves.[5]  *Compare* Dkt. No. 1, Exh. 6 *with* Dkt. No. 1, Exh. 2 at

(unnumbered) pp. 23-31.   Furthermore, the fact that more than "a few" stoves were

apparently sold at the bankruptcy auction does not establish that Goldberg's trial testimony

was perjurious.  A witness testifying under oath commits perjury where he "gives false

testimony concerning a material matter ***with the willful intent to provide false testimony,***

***rather than as a result of confusion, mistake, or faulty memory***."  *United States v.*

*Dunnigan*, 507 U.S. 87, 94 (1993) (emphasis added).  The record reflects that the bankruptcy

auction occurred on November 23, 1981.  *See* Dkt. No. 1, Exh. 2.  Goldberg's trial testimony

occurred more than three and one-half years later, on May 30, 1985.  Trial Tr. at

---

   [5] Goldberg's trial testimony was limited to the number of finished stoves that were sold at the bankruptcy auction.  *See* Trial Tr. at pp. 3-11.

(unnumbered) p. 1.  As Senior Judge Neil P. McCurn has recently observed, "discrepancies [in trial testimony] may well be the product of flaws of memory as opposed to perjurious statements." *Campbell*, 440 F.Supp.2d at 147 (citation and internal quotation omitted).  With the exception of Weichert's self-serving affidavit in support of his coram nobis application, nothing suggests – much less establishes – that Goldberg willfully intended to provide false testimony at the criminal trial.  To the contrary, the apparent discrepancy between Goldberg's trial testimony concerning the number of stoves sold at the bankruptcy auction *vis-a-vis* the number of stoves that appear to have actually been sold at that auction can be readily explained as a minor flaw in his memory some three and one-half years after the auction, rather that the product of intentional false testimony.

Petitioner also notes that at the September 1986 hearing held before Judge Gerling, Goldberg testified that there was "no way on earth I, as Trustee, or anyone that I know of, could reconstruct exactly what fruits [Weichert] has gained by virtue of it's conversion of the assets," of Timberline Energy, and thereafter conceded that he could not establish the "penny by penny amount of the loss" sustained by the bankruptcy estate of that company. *See* May, 2005 Aff. at ¶ 8; September, 1986 Tr. at p. 4.

However, Goldberg was never asked at trial, either on direct or cross-examination, to provide detailed testimony regarding all of the items that Weichert was alleged to have improperly diverted from the bankruptcy estate of Timberline Energy.  *See* Trial Tr. at pp. 3-11.  To the contrary, his trial testimony suggested – as did his testimony at the September 1986 hearing before Judge Gerling – that it would be extremely difficult to accurately determine the full extent of the loss sustained by Timberline Energy as a result of Weichert's conduct.  Specifically, he testified at trial that Timberline Energy did not maintain any records

with respect to the debts owed to it by various entities and individuals, and that it had no accounts receivable that were apparent from any business records of the company.  *See* Trial Tr. at pp. 4-5.  Goldberg additionally testified at trial that he could not properly determine the identities of the creditors of Timberline Energy "due to the lack of books and records." Trial Tr. at p. 9.  That trial testimony is consistent with Goldberg's subsequent testimony before Judge Gerling wherein he stated that it would be impossible to precisely ascertain the full extent of Weichert's fraudulent activities relating to Timberline Energy.

As to Weichert's claim alleging prosecutorial misconduct, there is no proof that the prosecution knew of the apparent minor discrepancy, if any, between Goldberg's trial testimony and the actual number of stoves sold at auction at the time he testified at trial.  Nor has petitioner established that the Government was aware that such witness would provide trial testimony that was anything other than truthful.[6]  Finally, petitioner has not established that the claimed perjurious testimony "undermine[d] confidence in the outcome of the trial,"*United States v. Bagley*, 473 U.S. 667, 678 (1985)), or that any of his *Brady* rights were violated at the criminal proceeding below.

For all of the foregoing reasons, petitioner's coram nobis application must be denied.

---

[6]  The inventory list of items sold at the Timberline Energy bankruptcy auction was presumably available to Weichert's trial counsel prior to trial.  Goldberg was never cross-examined about any discrepancy between the number of stoves that were sold at the auction as reflected in the auction's final invoice and his trial testimony concerning this issue.

## C.  <u>Possible Imposition of Sanctions</u>

Finally, even a cursory review of the printed inventory of the items sold at the Timberline Energy bankruptcy auction would alert the reader that far fewer than 333 finished stoves were sold at such auction.[7]   In fact, **less than 100**  finished stoves were sold at the auction according to the documents supplied by Weichert.  *Compare* Dkt. No. 1, Exh. 6 *with* Dkt. No. 1, Exh. 2 at (unnumbered) pp. 23-31.  The grossly inflated figure of 333 stoves was made a part of this application by petitioner's sworn affidavit of September 20, 2005.  *See* Attachment to Dkt. No. 1.

Additionally, and even more troubling, Weichert's affidavit claims that, *inter alia*, the convictions he challenges were "used as the reason for [Weichert's] disbarrment [*sic*]" from the bar of the State of New York.  *See* Dkt. No. 13 at ¶ 2(b).  Petitioner specifically "affirm[ed] under penalty of perjury, that he . . . read the content of [that] [a]ffidavit, and kn[ew] the contents to be true."  *See id.* (unnumbered) p. 3.  However, Weichert was, in fact, disbarred from the practice of law in this State on January 18, 1973, **more than one decade before** the convictions challenged herein.  *See Matter of Weichert*, 40 A.D.2d 261, 261-66 (4th Dept. 1973).

It is well-settled that "a motion for coram nobis [is] 'of the same general character as one under 28 U.S.C. 2255.'"  *United States v. Keogh*, 391 F.2d 138, 140 (2d Cir. 1968); *see*, *e.g.*, Fed.R.App.P. 4(a)(1)(C) ("[a]n appeal from an order granting or denying an application for a writ of error coram nobis is an appeal in a civil case for purposes of Rule 4(a)").   The Federal Rules of Civil Procedure may be applied, when appropriate, to habeas cases.  *See*

---

[7]  As noted *ante* at n. 5, Goldberg only testified at trial about the number of completed stoves which were sold at the Timberline Energy auction.

Rule 12 Foll. 28 U.S.C. § 2255, Fed. R. Civ. P. 81(a)(2); *see also Harris v. Nelson*, 394 U.S. 286, 299 (1969) ("habeas corpus jurisdiction and the duty to exercise it being present, the courts may fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage").  Rule 11(b) of the Federal Rules of Civil Procedure requires reasonable inquiry by attorneys and parties before signing such papers; Fed.R.Civ.P. 11(c) provides federal courts with the authority to sanction individuals who falsely certify in documents filed with the court.  Furthermore, the court has the inherent power to fashion appropriate sanctions for conduct which abuses the judicial process, and courts may raise such issue *sua sponte*.  *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 44-45 (1991); *United States v. Seltzer*, 227 F.3d 36 (2d Cir. 2000) (*passim*).

The petitioner's affidavit testimony filed with this court and cited above appears to be false.  At the present time, a final conclusion will not be made concerning the sworn assertions in the affidavit referenced above.  Rather, petitioner will be given an opportunity to explain the basis for his testimony which strongly suggests perjury.  After a review and evaluation of that submission, appropriate action will be taken.

## III. Conclusion

Weichert has established that he might suffer continuing legal consequences if his coram nobis application is denied.  However, he has failed to provide any valid reasons for the delay of approximately nineteen years between the time the last transcript upon which his application is based was transcribed, and the date he commenced this action.  Thus, the application must be dismissed as patently untimely.

Furthermore, Weichert has failed to meet his burden of demonstrating that the relief sought must be granted so as to achieve justice.  He has failed to establish that Goldberg

committed perjury at the criminal trial.  Petitioner has also completely failed to demonstrate that either AUSA Pease or then-United States Attorney Scullin were aware of the claimed perjury.  Neither has he demonstrated that any of his constitutional rights were violated at the criminal proceeding.

Finally, for the reasons discussed above, in determining whether sanctions are warranted, Weichert shall file and serve a sworn affidavit executed by him in which he addresses his statements, under oath, that: (1) the evidence establishes that 333 stoves of Timberline Energy were sold at the bankruptcy auction; and (2) the reason for his disbarment was the convictions he challenges in the present action.

THEREFORE, it is

ORDERED, that

1.  Petitioner's coram nobis application is DENIED and DISMISSED in its entirety;

2.  Petitioner is directed to file an affidavit addressing the issues referenced above, and serve a copy of same on the respondent's counsel, no later than <u>December 1, 2006</u>; and

3.  The Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties by regular mail and electronically.

IT IS SO ORDERED.

Dated:   October 24, 2006
         Utica, New York.

United States District Judge